UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW CORPUS,

    Plaintiff,

v.                                            Case No: 2:16-cv-620-FtM-38MRM

LAMOUR, FLORIDA DEPARTMENT
OF CHILDREN AND FAMILIES and
BILL PRICE,

    Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendants' Dr. Jacques Lamour and Bill Price's Motion for Summary Judgment, (Doc. 54) and Plaintiff Andrew Corpus' response in opposition. (Doc. 57). For the following reasons, the Court GRANTS the Motion for summary judgment.

## BACKGROUND

Plaintiff is a civil detainee at the Florida Civil Commitment Center (FCCC) in Arcadia, Florida. Plaintiff alleges that he has suffered with chronic back pain since 2005. He has been treated by Dr. Lamour since he arrived at the FCCC. Plaintiff alleges that Dr. Lamour and Price, the Health Service Administrator at the FCCC, were deliberately indifferent to his pain and suffering and deprived him of medical care. Plaintiff had been

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

receiving Tylenol 3 three times a day while he was incarcerated in prison. Dr. Lamour cancelled his prescription for Tylenol 3. Plaintiff says that he has filed repeated sick call requests for his medication with the FCCC medical department, but Dr. Lamour refused to restore his Tylenol 3 prescription.

Plaintiff complained that each morning he had to bend over and wrap his arms around his legs to warm up his muscles so he could stand and walk without pain. Dr. Lamour ordered an MRI on Plaintiff's lumbar, which revealed that Plaintiff had an arthritic back. Dr. Lamour sent Plaintiff to an outside neurosurgeon in March of 2009. The neurosurgeon administered a lumbar injection on June 25, 2009, and opined that surgery would not help Plaintiff's back issue. After receiving the lumbar injection, Plaintiff said his back felt better and that he no longer had trouble getting out of bed in the mornings.

On September 3, 2013, Plaintiff saw Dr. Lamour, again complaining of back pain. Dr. Lamour prescribed Plaintiff Tylenol 3 for his back pain from September 3, 2013 through March 4, 2014. Dr. Lamour noted that Plaintiff was taking Neurontin for his back pain while he was at the FCCC prior to September 3, 2013. Dr. Lamour described Tylenol 3 as a narcotic. He believes a patient may become addicted with continued Tylenol 3 use over time. In March of 2014, Dr. Lamour switched Plaintiff's medication back to Ultram, which is a less addictive pain reliever.

From April 30, 2014, through August 3, 2014, Dr. Lamour prescribed Plaintiff Vicodin. Dr. Lamour prescribed Vicodin for only a limited time because it is a strong narcotic that can be extremely addictive. Once Plaintiff's Vicodin prescription expired, he expressed his displeasure to FCCC Nurse Miller. Instead of Vicodin, Dr. Lamour treated

Plaintiff with Naproxen, a balm, and Flexril. In September of 2014, Plaintiff was prescribed Neurontin. Neurontin is a pain reliever but not as habit-forming as Vicodin or Tylenol 3.

Plaintiff was again seen by Nurse Miller on November 27, 2014. Nurse Miller gave Plaintiff regular Tylenol and he remained on Neurontin. Plaintiff was seen again by Nurse Miller on December 1, 2014, complaining of back pain. Plaintiff was given a Toradol injection and x-rays were ordered. The x-rays showed a mild dextricoliosis of the upper lumbar spine. On December 20, 2014, Plaintiff was given an increased dosage of Neurontin to help with his pain. Plaintiff did not report any further back pain issues until May 18, 2015.

On May 18, 2015, Plaintiff was seen by Nurse Hickson. Plaintiff was given an additional shot of Toradol and was told to keep taking Neurontin. On July 16, 2015, Dr. Lamour saw Plaintiff again and prescribed Tylenol 3. Dr. Lamour saw Plaintiff again on July 31, 2015. Plaintiff's Tylenol 3 prescription was renewed until August 13, 2015 at which time he had a follow-up appointment with Dr. Lamour. Plaintiff requested that his Tylenol 3 prescription be extended, but Dr. Lamour refused explaining that Tylenol 3 is addictive. Plaintiff became abusive at that time and Dr. Lamour called security to remove him from the office.

Plaintiff did not have any more back complaints until June 2, 2016. Dr. Lamour denied Plaintiff's request for Tramadol because he was already taking Ultram as well as Neurontin. On December 5, 2016, Plaintiff again saw Dr. Lamour for back pain. Dr. Lamour ordered additional x-rays and continued Plaintiff's medicines. On December 23, 2016, Plaintiff was provided with a bed wedge to help support his back. Plaintiff did not make any further back pain complaints until May 2017. On May 25, 2017, Plaintiff was

provided with an increased dosage of Ultram.  Dr. Lamour continues to treat Plaintiff with Ultram and Neurontin.  At no time since Dr. Lamour has been treating Plaintiff has he been denied pain medications.  Dr. Lamour has refused to continue to prescribe Tylenol 3 and Vicodin because they are addictive.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law.  *Id.*  The moving party bears the burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party.  *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

## DISCUSSION

Plaintiff asserts that Dr. Lamour and Price violated his Eighth and Fourteenth Amendment rights by refusing him pain medicines and moves the Court to reinstate his prescription for Tylenol 3 and to restrain Dr. Lamour from changing his medication.  Dr. Lamour replies that summary judgment should be entered in his favor because Plaintiff's claim is merely a disagreement with treatment and not a deliberate indifference to his

medical needs. Price argues that as Health Service Administrator at the FCCC he had no say in the actual medical treatment nor any authority to change Plaintiff's medications.

Ordinarily an inmate's claim concerning his medical treatment invokes the protections of the Eighth Amendment. *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted). However, because Plaintiff is a civil detainee, and not a prisoner, the less onerous "professional judgment" standard set forth in *Youngberg v. Romero*, 457 U.S. 307, 322-323 (1982), applies to his case. *See Hood v. Dep't of Children & Families*, 700 F. App'x 988, 989 n.1 (11th Cir. 2017) (noting that the Eighth Amendment deliberate indifference standard does not apply when the Plaintiff is a civil detainee. Rather, the professional judgment standard set forth by the Supreme Court in *Youngberg v. Romero*, should be applied).

In *Youngberg*, the Supreme Court held that the "professional judgment" standard was the appropriate test for determining whether a substantive due process right has been violated in the context of those of who have been involuntary committed. 457 U.S. at 322–323. Under that standard, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* at 321 (internal quotations and citations omitted). The standard acknowledges "that courts must show deference to the judgment exercised by a qualified professional," *id.* at 322, and that "i[f] or these reasons, the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the

5

decision on such a judgment." *Id.* at 323 (footnotes omitted). A "qualified professional" is defined as is "a person competent, whether by education, training or experience, to make the particular decision at issue." *Id.* at 323 n. 30.

### *Dr. Lamour*

Based upon Dr. Lamour's credentials, the Court finds that he is a qualified professional. He has worked at the FCCC since July 1, 2006 and is currently the facilities medical director. Dr. Lamour has been treating the Plaintiff at the FCCC since he was first committed. Plaintiff argues that Dr. Lamour deprived him of medical treatment and discriminated against him by refusing him pain relievers because he was in restrictive custody.

Plaintiff has never been without some form of pain relief for his back while under Dr. Lamour's care. *Id.* at ¶ 59. Dr. Lamour stated that he switched from Tylenol 3 to Ultram on March 13, 2013, because Ultram is an effective medication for back pain relief, and while it can be habit forming, it is not as addictive as Tylenol 3. *Id.* at ¶ 17-19. Dr Lamour also prescribed Vicodin for Plaintiff's back pain from April 30, 2014 through August 3, 2014. However, he stopped prescribing Plaintiff Vicodin because he does not like for patients to be on Vicodin for extended periods of time as he fears they will become addicted. *Id.* at ¶ 22.

Dr. Lamour says that he also treated Plaintiff with Tylenol 3 for short periods of time through August 15, 2015, and during a few weeks in 2016. (Doc. 54-8 at ¶ 12-13). Based upon his medical experience, Dr. Lamour stopped prescribing Tylenol 3 for Plaintiff because Tylenol 3 is extremely addictive. *Id.* at ¶ 15. Instead of Vicodin and Tylenol 3,

Dr Lamour prescribed Plaintiff Neurontin, which is known to be an effective pain reliever. Plaintiff has been on Neurontin the entire time he has been at the FCCC.

Plaintiff was also referred to specialists by Dr. Lamour on several occasions. Plaintiff received MRI's, x-rays, and lumbar injections for his back, as well as Ultram and Neurontin for pain. Thus, Plaintiff was provided with regular and extensive treatments for his back pain that fall well within the standard norms of treatment. Plaintiff's only issue is he disagrees with the medications he is receiving from Dr. Lamour. Plaintiff refers to Ultram and Neurontin as junk medicines, however, Dr. Lamour asserted — based upon his training and experience — that Neurontin is an effective pain reliever for back pain. *Id.* at ¶¶ 17-19.

Plaintiff only claims that Defendants violated his Constitutional rights by refusing to prescribe Tylenol 3 or Vicodin for his back pain. Applying the professional judgment standard to this case, Dr. Lamour's treatment regimen must be considered as presumptively valid and this Court must show deference to his judgment. The Court finds from the undisputable evidence in the record that no reasonable person could find that the care afforded by Dr. Lamour constitutes a substantial departure from accepted professional judgment, practice, or standards. Plaintiff does not present any evidence or facts that dispute Dr. Lamour's treatment or show that Dr. Lamour's treatment regimen was substandard when measured against the norms of back pain treatment. The record supports Dr. Lamour's position that Neurontin is an effective pain reliever as Plaintiff went for six months or longer on several occasions without reporting any complaints of back pain. Dr. Lamour was very attentive to Plaintiff's medical care and Plaintiff never went without some form of pain relief. Therefore, summary judgment is found for Dr. Lamour.

*Bill Price*

Plaintiff alleges that Price violated his constitutional rights because he denied him access to medical care. As the Health Services Administrator at the FCCC, Price did not practice medicine, treat residents, offer medical advice to medical staff, or diagnose residents. (Doc. 54-9 at ¶¶ 1-4). Rather Price's job at the FCCC was "to administratively manage and evaluate health service activities and ensure compliance with DCF contractual guidelines." *Id.* at ¶ 6. Price relied on the physicians, nurses and assistants to treat and care for the patients and residents at the FCCC. *Id.* at ¶ 5. Price never offered any medical advice to the medical staff at the FCCC. *Id.* at ¶ 7.

Price was not a decision maker as defined in *Youngberg*; instead, he was an administrator involved with compliance issues. Whether the *Youngberg* standards are applicable to non-professionals like Price may be arguable; however, there is no clearly established law to that effect. *Kyle K. v. Chapman*, 208 F. 3d 940, 943 (11th Cir. 2000). While Plaintiff states that Price prevented him from obtaining a prescription for Tylenol 3 or Vicodin, Price could not authorize, deny, or alter prescription medications to residents at the FCCC. Since Price had no control over Plaintiff's medications, Plaintiff's claim against Price fails.

## **CONCLUSION**

The undisputed facts in this case establish that Dr. Lamour exercised professional judgment in treating Plaintiff's back pain. Price was not involved in treating Plaintiff and, therefore, Plaintiff fails to state a claim against him.

Accordingly, it is now

**ORDERED:**

1. Defendants Dr. Jacques Lamour and Bill Price's Motion for Summary Judgment (Doc. 54) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment accordingly, terminate all pending motions and deadlines and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida this 19th day of October, 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:

All Parties of Record
SA: FTMP-2